IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY ANGELO DEGENES,** ) | CIVIL ACTION NO. 20-971 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **FEDERAL BUREAU OF** ) | |
| **INVESTIGATION,** ) | |
| **and DAVID M. HARDY,** ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

I.   Introduction

In the complaint (ECF No. 1), pro se plaintiff Anthony Angelo DeGenes ("DeGenes")[1] contends that the Federal Bureau of Investigation ("FBI") and David M. Hardy ("Hardy"), an FBI agent and section chief of the Record/Information Dissemination Section ("RIDS") (collectively, "defendants"), committed misconduct.  Specifically, DeGenes contends that Hardy lied by stating in a sworn declaration, dated March 26, 2012 (the "Hardy Declaration"), that the FBI located no records responsive to DeGenes' request under the Freedom of Information Act ("FOIA").  DeGenes attached the Hardy Declaration as an exhibit to his complaint (ECF No. 1-1).

Now pending before the court is a motion filed by defendants to dismiss this case, or alternatively, for summary judgment (ECF Nos. 34, 35).  DeGenes filed a response in opposition

---

[1] DeGenes mis-typed his name as "Degens" in the caption of the complaint and the clerk's office adopted that spelling when it filed the complaint.

to the motion (ECF No. 38)[2] and it is ripe for disposition. Also pending are several motions filed by DeGenes that will be denied as moot due to the outcome of defendants' motion.[3]

Factual and Procedural Background

The focus of the complaint in this case (Civil Action No. 20-971) is a purported falsehood made by Hardy on March 26, 2012. The Hardy Declaration was filed in a different FOIA case, Civil Action No. 11-916. On September 27, 2012, the court entered an order dismissing Civil Action No. 11-916 with prejudice for two complementary reasons: (1) DeGenes' failure to exhaust his administrative remedies; and (2) lack of subject-matter jurisdiction because the FBI did not withhold any responsive documents. (Civil Action No. 11-916, ECF No. 65). On May 11, 2020, the court denied DeGenes' motions to reopen the case, some seven years later, as untimely filed (Civil Action No. 11-916, ECF No. 73, 74).

DeGenes complaint in this case, Civil Action No. 20-971, soon followed. DeGenes alleges that Hardy lied in 2012 when he stated that the FBI had no documents responsive to a FOIA request DeGenes made on June 9, 2011 (ECF No. 1-1 at 7,8). DeGenes believes that he was placed on an FBI list after his chance encounter with Joey Bertone, an alleged mobster, in a bar in 1986. DeGenes maintains that his name is still on the FBI watch list/RICO list and that Hardy lied in his 2012 declaration to the court. Complaint ¶¶ 2, 11. DeGenes believes he is a victim of an ongoing "defamatory, slander campaign." Complaint at 3. As evidence, DeGenes cites his difficulties in 1996 obtaining a job as a school bus driver and hiring an attorney.

---

[2] DeGenes filed the document on the docket as "Exhibit #13" and captioned it "Motion," but the substance of the document is DeGenes' response to the motion to dismiss. *See* ECF No. 38 ¶ 1 ("this Motion is in answer to your Honor's brief for 'Defendant's Brief to Dismiss.' Document 35, dated 11-2-2020.").

[3] The court's CM/ECF system reflects pending motions at ECF Nos. 23, 24 and 25. DeGenes captioned other documents as "motions" (for example, ECF Nos. 33, 37, 38), but they were not docketed as motions because they did not present requests for action by the court.

Complaint ¶¶ 5-18.  The relief DeGenes seeks is appointment of an attorney[4] and money damages.  Complaint at 4.

In support of their motion to dismiss or for summary judgment, defendants submitted a declaration from Michael Seidel ("Seidel"), the current section chief of RIDS (ECF No. 35-1).  Seidel did not address DeGenes' 2011 FOIA request, but instead, described more recent FOIA requests made by DeGenes in 2016 and 2017.  In particular, Seidel represented that on October 17, 2016, DeGenes submitted FOIA request #1360078, which requested records dating back to 1986 to see if he was investigated by the FBI or police for being seen with Joey Bertone.  On October 31, 2016, the FBI responded by stating it was unable to identify main file records responsive to DeGenes' request and explaining the exemptions set forth in FOIA, 5 U.S.C. § 552(b)(7)(E), and the Privacy Act, 5 U.S.C. § 552a(j)(2).  DeGenes was notified of his appeal rights.  On November 9, 2016, DeGenes sent a letter acknowledging the FBI's response, and seeking advice on how to backdate his request to 1978.  By letter dated January 13, 2017, the FBI interpreted DeGenes' letter as an inquiry into how to expand the scope, rather than a challenge to its determination; instructed DeGenes to file a new FOIA request with the expanded scope; and terminated his "appeal" of the October 31, 2016 response on FOIA request #1360078.  *See* Seidel Declaration and exhibits attached thereto (ECF No. 35-1).

On March 14, 2017, DeGenes submitted FOIA Request #1370463, which involved a 1978 background check.  On April 7, 2017, the FBI responded that no main file records were located in response to that request and explained the exemptions set forth in FOIA, 5 U.S.C. §

---

[4] The court denied DeGenes' requests for appointment of counsel by opinion and order dated July 15, 2020 (ECF Nos. 4,5) and denied his motion for reconsideration of that decision on August 21, 2020 (ECF Nos. 16, 17).  The court encouraged DeGenes to retain his own attorney, which he represented he has the financial resources to do.  DeGenes' filings at ECF Nos. 23 and 24 (which are partially duplicative) were docketed as motions to reconsider the court's decision of August 21, 2020.

552(b)(7)(E), and the Privacy Act, 5 U.S.C. § 552a(j)(2). DeGenes was notified of his appeal rights but did not pursue an appeal. Seidel Declaration ¶ 15.

In his response to defendants' motion, DeGenes attempted to clarify the basis for his complaint. (ECF No. 38 ¶ 2). DeGenes explained that he had a chance encounter with Bertone in a bar in 1986; that he did not know Bertone; and that he learned Bertone disappeared soon after the encounter and was never found. DeGenes explained that in 1996 (ten years later), he quit his job and attempted to get a part-time job driving a school bus. On several occasions, he was provisionally hired, but the next day that person would refuse to see him. When DeGenes attempted to hire an attorney to seek redress, the attorneys refused to take his case. DeGenes suffered confrontations in 1996 with a district magistrate and someone in a bar in which he was accused of child abuse.[5] (ECF No. 38 ¶¶ 15-24). DeGenes surmises that because of his chance encounter with Bertone in 1986, he was placed on an FBI RICO/watch list. (ECF No. 38 ¶ 33). DeGenes believes that his name is still on file and he wants to clear his name by forcing the FBI and Hardy to give him his FOIA records. Id.

DeGenes concedes that the FBI is correct that he did not exhaust his administrative remedies. (ECF No. 38 ¶¶ 38, 46). DeGenes confirms that he "decided not to purs[u]e submitting a request for the 1978 records." Id. ¶ 45. DeGenes contends that this case is not preempted by Civil Action No. 11-916 because this case is against Hardy for fraud and misconduct, rather than against the FBI under FOIA. Id. ¶¶ 37, 39, 49-50.

---

[5] DeGenes did not explain the connection between his encounter with Bertone in 1986 and the accusations of child abuse in 1996.

II.  Standard of review

The court conducts the following analysis to determine whether a complaint should be dismissed at the pleading stage:

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n. 27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," Twombly, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." Id. (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.
>
> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679; see also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Connelly v. Lane Const. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016). At the final step, the court is to assume all well-pled allegations to be true, construe those allegations in the light most favorable to the plaintiff, draw all reasonable inferences from them in favor of plaintiff, and ask whether they "raise a reasonable expectation that discovery will reveal evidence" to support the legal claim being asserted. Id. at *7.

III.   Discussion

*Pro se* plaintiffs are held to a less stringent standard than individuals represented by counsel. Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) ("*pro se* litigants are held to a lesser pleading standard than other parties"). A *pro se* plaintiff, however, is still required to adhere to standard rules of civil procedure. See McNeil v. United States, 508 U.S. 106, 113 (1993); Haines v. Kerner, 404 U.S. 519, 520 (1972).

Because DeGenes is pro se and did not identify the legal theory he is asserting, the court evaluated several different potential claims based on the facts set forth in the complaint, viewed in the light most favorable to DeGenes.

A. Freedom of Information Act (FOIA)

To the extent DeGenes is attempting to pursue an action directly under FOIA, it cannot succeed. FOIA claims can only be brought against the agency (i.e., the FBI), and not against a federal employee such as Hardy. Kaplan v. Ebert, 648 F. App'x 177, 180 (3d Cir. 2016) (citing Drake v. Obama, 664 F.3d 774, 785–86 (9th Cir. 2011) (collecting cases)). Money damages – the relief sought by DeGenes in the complaint – are not recoverable under FOIA. Id. (citations omitted). In sum, DeGenes cannot state a valid FOIA claim against Hardy.

A FOIA claim against the FBI must also fail.  "[T]he FOIA requires exhaustion of the administrative appeals process before an individual may seek relief in the district court." Conley v. Fed. Bureau of Investigation, 714 F. App'x 191, 194 (3d Cir. 2017) (quoting McDonnell v. United States, 4 F.3d 1227, 1240 (3d Cir. 1993)).  DeGenes admitted that he failed to exhaust his administrative remedies.  ECF No. 38 at ¶¶ 38, 46; See also Civil Action No. 11-916, ECF No. 65 (dismissing Civil Action No. 11-916 with prejudice based on DeGenes' failure to exhaust his administrative remedies).  DeGenes' pro se status does not excuse his failure to comply with the exhaustion requirement.  Conley, 714 F. App'x at 191 (involving a pro se prisoner).   The court also observes that the FOIA claim involving Hardy's alleged falsehood was resolved in Civil Action No. 11-916 and DeGenes represents that he is not seeking to relitigate those claims in this case.[6]

A FOIA claim would also be untimely filed.  It is "beyond dispute" that the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) applies to FOIA claims.  Reep v. United States Dep't of Justice, No. 18-5132, 2018 WL 6721099, at *1 (D.C. Cir. Dec. 18, 2018). DeGenes allegations in the complaint are based on Hardy's alleged misstatements in a 2012 declaration.  The complaint was not filed until 2020, some eight years later.

The court also harbors substantial doubts about its jurisdiction over a FOIA claim.  There is a distinction between circumstances in which an agency wrongfully withholds documents and circumstances in which no responsive documents exist.  "Plaintiffs who do not allege any improper withholding of agency records fail to state a claim for which a court has jurisdiction under the FOIA." Goldgar v. Office of Admin., Exec. Office of the President, 26 F.3d 32, 34 (5th Cir. 1994) (citing Natl. Federation of Fed. Empl. v. United States, 695 F. Supp. 1196, 1204

---

[6] The court accepts DeGenes' representation and therefore will not address defendants' arguments about res judicata and collateral estoppel.

7

(D.D.C.1988)). In *Goldgar*, as in this case, the agency conducted a search and determined that no responsive documents existed. The court dismissed the complaint for lack of subject-matter jurisdiction. The court recognized that it is the agency's burden to prove the non-existence of the records sought, but held that the agency met this burden. Id. The same reasoning applies here. DeGenes' conclusory, unsupported allegation that responsive records do exist, contrary to defendants' response, does not trigger the court's jurisdiction.[7] DeGenes does not contend that specific records were improperly withheld. Bartlett v. U.S. Dep't of Justice, F.B.I., 867 F. Supp. 314, 316–17 (E.D. Pa. 1994) ("Federal jurisdiction under FOIA is premised on a finding that an agency has improperly withheld records. Because we do not find that the FBI has improperly withheld records from Bartlett, we do not have jurisdiction over his claim.").

For all these reasons, the court concludes that a claim under FOIA would not succeed.

B. Torts or Civil Rights Actions

An alternative interpretation of DeGenes' complaint is that he is attempting to assert tort claims for defamation or fraud or allege that defendants violated his constitutional rights. Those kinds of claims must also fail.

Congress chose to provide federal employees (such as Hardy) with absolute immunity for acts within the scope of their employment. Plaintiffs' sole remedy is a Federal Tort Claims Act

---

[7] As set forth in N'Jai v. U.S. E.P.A., No. CIV.A. 13-1212, 2014 WL 2508289 (W.D. Pa. June 4, 2014), "[t]he relevant inquiry is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. U.S. Dept. Of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To demonstrate the adequacy of its search, the agency should provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched." Id. at *9 (citations omitted). DeGenes did not contest the adequacy of the search for documents conducted by the FBI, as set forth in the Seidel Declaration.

("FTCA") suit against the United States under 28 U.S.C. § 2671 et seq. Robinson v. Egnor, 699 F. Supp. 1207, 1214 (E.D. Va. 1988); Melo v. Hafer, 912 F.2d 628, 639 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991) (noting the "exclusive remedy against the United States for suits based on certain negligent or wrongful acts of federal employees acting within the scope of their employment"). DeGenes' allegations clearly relate to Hardy's actions within the scope of his employment, i.e., statements he made about the search for documents in his role as head of the FBI RIDS section.

Defamation suits against the United States are prohibited and must be dismissed for lack of subject-matter jurisdiction. Rosado v. Sessions, No. CV153999ESJAD, 2018 WL 2411608, at *3 (D.N.J. May 29, 2018) (citing Brumfield v. Sanders, 232 F.3d 376, 382 (3d Cir. 2000) (involving a claim that an FBI officer lied).

DeGenes cannot succeed in a claim under the FTCA because he failed to allege that he exhausted his administrative remedies. Under 28 U.S.C. § 2675(a), "a plaintiff may not bring a claim under the FTCA unless he 'first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim.'" Burrell v. Loungo, 750 F. App'x 149, 154 (3d Cir. 2018) (quoting Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015)). The requirement that the plaintiff exhaust his claims before filing a complaint is "jurisdictional and cannot be waived." Id. DeGenes had interactions with the FBI regarding its FOIA response, but there is no evidence of record that he presented a FTCA claim or that the FBI denied a FTCA claim. Horne v. Cherry Hill Office of Fed. Bureau of Investigations, No. CV165620, 2020 WL 2570016, at *3 (D.N.J. May 21, 2020) (dismissing FTCA claims based on an allegation that an FBI agent lied because plaintiff failed to exhaust his administrative remedies). A claim under the FTCA would also be untimely filed. "A tort claim against the United States shall be forever barred unless it is

9

presented in writing to the appropriate Federal agency within two years after such claim accrues ...." Medina v. City of Phila., 219 F. App'x 169, 172 (3d Cir. 2007) (citing 28 U.S.C. § 2401(b)).

To the extent DeGenes could be asserting a *Bivens* claim, that is, an action against federal officials who violated his constitutional rights under color of federal law, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), it is clear from the face of the complaint that the claim is barred by the applicable two-year statute of limitations. *Davis v. FBI*, No. CV 13-1657-GMS, 2013 WL 6852351, at *3 (D. Del. Dec. 27, 2013). DeGenes alleges that Hardy lied in a court filing in 2012 and this case was not filed until 2020, some eight years later. There is no basis to toll the limitations period. A *Bivens* claim is clearly untimely filed.

For all these reasons, to the extent that DeGenes is attempting to assert tort or constitutional claims against defendants, those claims must be dismissed.

C. Privacy Act

It appears to the court that what DeGenes is really seeking is a mechanism to clear his name. (ECF No. 38 ¶ 33). He may be able to obtain that relief from the FBI under the Privacy Act. "[T]he Privacy Act was designed to provide individuals with more control over the gathering, dissemination, and accuracy of agency information about themselves," in contrast to the FOIA, whose purpose is to increase the public's access to governmental information. Greentree v. U.S. Customs Serv., 674 F.2d 74, 76 (D.C. Cir. 1982). The Privacy Act "requires that government records be maintained 'with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual[.]'" Patterson v. F.B.I., 705 F. Supp. 1033, 1041–42 (D.N.J. 1989), aff'd sub nom. Patterson by Patterson v. F.B.I., 893 F.2d 595 (3d Cir. 1990) (quoting Greentree, 674 F.2d at 76).

The Privacy Act provides, in relevant part:

(d) Access to records.--Each agency that maintains a system of records shall--
> (1) **upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him** and upon his request, a person of his own choosing to accompany him, **to review the record** and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence;
>
> (2) **permit the individual to request amendment of a record pertaining to him** and--
> (A) not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and
> (B) promptly, either--
> (i) **make any correction of any portion thereof which the individual believes is not accurate**, relevant, timely, or complete; or
> (ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official;

5 U.S.C. § 552a(d) (emphasis added). The Privacy Act also describes the procedures to be followed by an "individual who disagrees with the refusal of the agency to amend his record." Id. If the individual is not satisfied after completing the administrative process, he may file a civil action in federal court against the agency. 5 U.S.C. § 552a(g). If DeGenes pursues relief under the Privacy Act, he should be aware of the potential application of exemptions from disclosure for documents maintained in connection with "law enforcement activity" pursuant to § 552a(e)(7) or "criminal investigations" pursuant to § 552a(j)(2). See Patterson, 705 F. Supp. at 1042-43.

DeGenes cannot succeed under the Privacy Act under the facts alleged in the complaint in this case. Administrative exhaustion is a statutory prerequisite to a Privacy Act claim seeking

11

to have an agency amend its records. N'Jai v. Soc. Sec. Admin. Comm'r, No. CV 18-1616, 2019 WL 652842, at *4 (W.D. Pa. Feb. 15, 2019) (quoting Quinn v. Stone, 978 F.2d 126, 137–38 (3d Cir. 1992) (sections 552a(d)(2) and (3) "entail a requirement that the plaintiff exhaust [his] administrative remedies before [he] can take advantage of 5 U.S.C. § 552a(g)(2)(A)."). Here, there is no evidence of record or allegation in the complaint that DeGenes sought relief under the Privacy Act. DeGenes could not asset a Privacy Act claim against a federal employee (such as Hardy) in any event.

In sum, DeGenes cannot succeed under the Privacy Act in federal court under the allegations in this case. The court's decision, however, is without prejudice to his ability to pursue administrative relief as provided under that statute.

Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In other words, leave to amend "must generally be granted unless equitable considerations render it otherwise unjust." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citing Forman v. Davis, 371 U.S. 178, 229 (1962)). The Third Circuit Court of Appeals explained in U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242 (3d Cir. 2016):

> There are three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend: when "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."

Id. at 249 (quoting U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 849 (3d Cir. 2014)). In  Klay v. AXA Equitable Life Ins. Co., No. CV 09-12, 2011 WL 13234425 (W.D.

Pa. Aug. 25, 2011), the court noted that considerations of judicial economy and the need for finality weighed in favor of denying leave to amend. Id. at *3.

The allegations of the complaint in this case (Civil Action No. 20-971) relate to a 2012 declaration made by Hardy in a FOIA dispute that was resolved by Civil Case No. 11-916. For the numerous reasons set forth above, the court concludes that DeGenes will be unable to state valid claims against defendants. Amendment of the complaint, therefore, would be futile and inequitable. The complaint in Civil Action No. 20-971 will be dismissed with prejudice and this case will be marked closed. As explained above, this dismissal is without prejudice to DeGenes' ability to pursue administrative relief under the Privacy Act.

Conclusion

In accordance with the foregoing, defendants' motion to dismiss this case (ECF No. 34) will be GRANTED. The complaint will be dismissed with prejudice and without leave to amend and this case will be marked closed. All other pending motions (ECF Nos. 23, 24, 25) will be DENIED AS MOOT.

An appropriate Order will be entered.


Dated: January 14, 2021             BY THE COURT,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Court Judge